UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.

JAMES HOWARD LAUGHTON,

                Defendant.

_____/

Case No. 1:02-cr-20016
Case No. 1:04-cr-20038-7

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**

James Howard Laughton seeks early termination of his 10-year term of supervised release—a reduction of more than 7 years. As explained hereafter, the relevant § 3553(a) factors weigh against early termination at this time, so his request will be denied without prejudice.

**I.**

In October 2001, the FBI and Michigan law enforcement began to investigate the Harrison Chapter of the Flying Wheels Motorcycle Club for drug trafficking. Defendant James Howard Laughton was a known member of the Flying Wheels. PSR ¶¶ 53.

In March 2002, statements from Laughton and another gang member suggested they murdered a confidential informant in his house with point-blank gunshots to the head after they suspected his cooperation in the investigation. *See id.* ¶¶ 57–59. Another confidential informant made purchases of methamphetamine from Laughton. *Id.* at ¶¶ 44–45. Soon after the purchases, a search warrant was executed at Laughton's house, where law enforcement seized methamphetamine, cocaine, marijuana, prescription narcotics, ammunition, multiple firearms— one stolen—and a Genesee County Sheriff's badge. *Id.* at ¶ 47.

In February 2007, a jury found Laughton guilty of distributing methamphetamine, 21 U.S.C. § 841(b)(1)(C), and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). *United States v. Laughton*, No. 1:02-CR-20016 (E.D. Mich. Feb. 9, 2007), ECF No. 129. While awaiting sentencing for those charges, he was pending an indictment in a separate case for conspiracy to distribute more than 500 grams of methamphetamine, 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), 846, conspiracy to commit murder, 21 U.S.C. §§ 846, 848(e)(1)(A), murder, 18 U.S.C. § 2, 21 U.S.C. § 848(e)(1)(A), capital murder committed during a drug-trafficking conspiracy, 18 U.S.C. §§ 2, 924(c)(1)(A)(iii), 924(j)(1), felon in possession of ammunition, 18 U.S.C. §§ 922(g)(1), 924(a)(2), murder of a witness, 18 U.S.C. §§ 2, 1512(a)(1)(C). *United States v. Laughton*, No. 1:04-CR-20038-7 (E.D. Mich. Feb. 8, 2006), ECF No. 217. In the separate case, he pleaded guilty to conspiracy to distribute at least 500 grams of methamphetamine, 21 U.S.C. §§ 841(b)(1)(A)(viii), 846. *Laughton*, No. 1:04-CR-20038-7 (E.D. Mich. Sept. 10, 2007), ECF No. 425.

Both of his cases were consolidated for sentencing. In November 2007, he was sentenced to 293 months' imprisonment, followed by 10 years of supervised release. *Laughton*, No. 1:02-CR-20016 (E.D. Mich. Nov. 15, 2007), ECF No. 143. In October 2016, his term of imprisonment was reduced to 240 months under 18 U.S.C. § 3582(c)(2). *Laughton*, No. 1:02-CR-20016 (E.D. Mich. Oct. 25, 2016), ECF No. 145.

Laughton was released from prison on February 18, 2020. *Laughton*, No. 1:04-CR-20038-7, (E.D. Mich. Feb. 24, 2023), ECF No. 737 at PageID.4843–44. In December 2022, he requested and was denied court-appointed counsel to seek early termination of his supervised release. *United States v. Laughton*, No. 1:02-CR-20016, 2022 WL 17416670, at *2 (E.D. Mich. Dec. 5, 2022).

After serving nearly 18 years in prison and completing 28% of his term of supervised release, he filed a *pro se* motion to terminate his supervised release under 18 U.S.C. § 3583(e)(1). *Laughton*, No. 1:04-CR-20038-7, (E.D. Mich. Feb. 8, 2023), ECF No. 735. As of his filing, he had 72% of supervised release remaining—more than 7 years. The Government opposes his request. *Laughton*, No. 1:04-CR-20038-7, (E.D. Mich. Feb. 24, 2023), ECF No. 737.

Because the terms of Laughton's supervised release will not be modified, his motion will be resolved on the papers. *See* FED. R. CRIM. P. 32.1(c) (requiring a hearing, with two exceptions, "[b]efore *modifying* the conditions" (emphasis added)); *see* FED. R. CRIM. P. 32.1 advisory committee's note to 2005 amendment (explaining that "the right of allocution" extends to modification hearings "to give the defendant the opportunity to make a statement and present any mitigating information" if "the court may decide *to modify* the terms or conditions of the defendant's probation" (emphasis added)); *see also United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *7 (E.D. Tenn. Apr. 15, 2020) ("[T]he Court generally must hold a hearing *before modifying* the conditions." (citing FED. R. CRIM. P. 32.1(c)(2)(B)–(C) (emphasis added)).

## II.

A sentencing court may terminate a term of supervised release if "after considering the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice . . . ." 18 U.S.C. § 3583(e)(1).

The relevant § 3553(a) factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    . . .
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and

>>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>>> . . .
>> (4) the kinds of sentence and the sentencing range established for—
>>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
>> (5) any pertinent policy statement . . .
>> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). "Early termination of supervised release is a discretionary decision that is only warranted in cases where the defendant shows changed circumstances—such as exceptionally good behavior." *United States v. Atkin*, 38 F. App'x 196, 198 (6th Cir. 2002) (unpublished) (citing *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)). In other words, "early termination is not warranted as a matter of course." *United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005) (citing *Lussier*, 352 F.3d at 36).

"[F]ull compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination." *United States v. Givens*, No. CR 5:14-074-DCR, 2022 WL 2820081, at *1 (E.D. Ky. July 19, 2022) (quoting *McKay*, 352 F. Supp. 2d at 361). "Similarly, 'productive employment, while laudable, does not justify the termination of supervision.'" *Id.* (quoting *United States v. Olivieri*, 72 F. Supp. 3d 401, 403 (S.D.N.Y. 2014)). If "unblemished" postrelease conduct warranted termination of supervised release, then "'the exception would swallow the rule,' i.e., diligent service of the full period of supervised release imposed at sentencing." *Id.* (quoting *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

### III.

Laughton notes "several positive changes in [his] life": (1) being productive "in general," (2) not using any illegal drugs or breaking any laws, (3) receiving "several" promotions at the job

he has held for 41 months, (4) getting married and rebuilding familial bonds, and (5) purchasing land, a mobile home, and "several vehicles." *United States v. Laughton*, No. 1:04-CR-20038-7, (E.D. Mich. Feb. 8, 2023), ECF No. 735 at PageID.4840. His probation officer has confirmed all those statements to be true via email.

While "commend[ing] Laughton's successful reintegration," the Government opposes early termination based on his "criminal history," "violent history, membership in a violent motorcycle gang, alleged conduct in a murder," and the "very troubling" nature of the underlying case. *Laughton*, No. 1:04-CR-20038-7, (E.D. Mich. Feb. 24, 2023), ECF No. 737 at PageID.4847.

"[C]onsideration must be given to *all* the [relevant] § 3553(a) factors, even those that do not favor early termination." *United States v. Threet*, No. 1:09-CR-20523-5, 2023 WL 2201023, at *2 (E.D. Mich. Jan. 31, 2023). The movant must "make a compelling case as to why the . . . § 3553(a) analysis would be different if conducted today." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (presuming that a "district court's initial balancing of the § 3553(a) factors . . . remains an accurate assessment as to whether those factors justify a sentence reduction").

The first two factors tend to blend here. The first factor is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The second factor is "the need for the sentence imposed." *Id.* § 3553(a)(2).

Laughton's offense, history, and characteristics affirm the need for the sentence imposed. Apart from his *Sons of Anarchy*-esque involvement in the Flying Wheels motorcycle gang, *see* discussion *supra* Part I, Laughton's prior convictions for felony drug offenses qualified him for a sentencing enhancement under 21 U.S.C. § 851, *see Laughton*, No. 1:04-CR-20038-7, (E.D. Mich. Aug. 2, 2005), ECF No. 89; PSR ¶ 34. Suffice it to say, Laughton is a seasoned drug trafficker. "Society as a whole is the victim when illegal drugs are being distributed in its communities."

*United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008). And despite being indicted for allegedly murdering someone in cold blood, which he avoided by plea, his original sentence was reduced by nearly five years. *Laughton*, No. 1:02-CR-20016 (E.D. Mich. Oct. 25, 2016), ECF No. 145. Yet, as Laughton puts it, his original sentence has "create[d] a person who is a productive member of society." *Laughton*, No. 1:04-CR-20038-7, (E.D. Mich. Feb. 8, 2023), ECF No. 735 at PageID.4840; *see United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.").

True, for three years, he has avoided trouble, maintained employment, and built a family. *Id.* All commendable. His probation officer even corroborates his claims, does not object to terminating his supervised release, and adds that Laughton's "greatest accomplishment has been the ability to transform his social networks. . . . developing a positive support system since his release." Memorandum from Matthew A. Romeo, Senior U.S. Prob. Officer, to author (Feb. 21, 2023) (on file with author). In this way, there is no apparent need to deter Laughton from criminal conduct, to protect the public from him, or to provide him with resources and care.

But that conduct is expected of everyone released from prison and is not "*exceptional*." *See, e.g.*, *United States v. Merrill*, No. 1:12-CR-20839, 2022 WL 18860291, at *3 (E.D. Mich. May 2, 2022) (emphasis added) (terminating supervised release based in part on the defendant's volunteer work in the community, activity in his church, and regular attendance at therapy). And no third party has suggested that his postrelease conduct outweighs his criminal conduct. *See id.* (noting good conduct that was "substantiated by letters from his psychologist, a former colleague, and his former pastor"). Without those new colors, his nigh three-year stroke of exemplary behavior cannot paint over his canvas of criminal conduct. *See* PSR ¶¶ 79–107. Balancing Laughton's offense, history, and characteristics—especially the nature of his offense and his at-par

postconviction behavior—the first two factors are *neutral*. To weigh in *favor* of release, he must be *exceptional*. *United States v. Atkin*, 38 F. App'x 196, 198 (6th Cir. 2002) (unpublished) (citing *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

The third factor is "the kinds of sentence and the sentencing range established for [Defendant's offense]." 18 U.S.C. § 3553(a)(4). According to the relevant statutes, Laughton's minimum term of supervised release was 10 years. *See* 21 U.S.C. §§ 841(b)(1)(A)(viii); *Laughton*, No. 1:04-CR-20038-7, (E.D. Mich. Sept. 11, 2016), ECF No. 631 at PageID.4062, 4066. But Laughton has only completed 28% of his statutorily required term of supervised release. His likelihood of reaching the summit is unclear with less than a third of the climb in the rear. So—at this time—this factor weighs heavily *against* early termination.

The fourth factor is "any pertinent policy statement" that is (1) "issued by the Sentencing Commission" and (2) "in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(5). But Laughton does not identify any pertinent policy statement, and this Court is unaware of any. So the fourth factor is *neutral*.

The fifth factor is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6). Laughton was silent on this factor—unfortunately, another missed opportunity to appreciate his perspective. Even so, his sentence was within the ranges of the Sentencing Guidelines and the relevant statutes. *See* PSR ¶¶ 27, 43, 109 (recommending 210–262 months' imprisonment); *United States v. Jeter*, 721 F.3d 746, 757 (6th Cir. 2013) ("A sentence falling within the Guidelines range is presumptively reasonable; one falling outside the Guidelines range carries no such presumption."). And it was the bottom of the guideline range from his Rule 11 plea agreement. *Laughton*, No. 1:04-CR-20038-7, (E.D. Mich. Sept. 11, 2016), ECF No. 631 at PageID.4065 (pleading guilty to

a range of 240–293 months). And terminating his supervised release today would cut more than 70% of his 10-year statutory minimum. *See* 21 U.S.C. § 841(b)(1)(A)(viii). There is no apparent unwarranted disparity, so this factor weighs heavily *against* early termination.

The sixth and final factor is "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Laughton was not directed to pay restitution. *Laughton*, No. 1:02-CR-20016 (E.D. Mich. Nov. 15, 2007), ECF No. 143 at PageID.1107. Therefore, the final factor is *neutral*.

As indicated, the relevant § 3553(a) factors score 0–2–4 against early termination of supervised release. True, Laughton has demonstrated a true commitment to rehabilitation since his supervised release term began. But that conduct cannot serve as a substitute for fulfilling the statutory minimum term of supervised release. Therefore, early termination of Laughton's supervised release is not "warranted by [his] conduct . . . and the interest of justice." 18 U.S.C. § 3583(e)(1). Consequently, his motion will be denied without prejudice.

## IV.

Accordingly, it is **ORDERED** that Defendant's Motion for Early Termination of Supervised Release, *United States v. Laughton*, No. 1:04-CR-20038-7, (E.D. Mich. Feb. 8, 2023), ECF No. 735, is **DENIED WITHOUT PREJUDICE**.


Dated: February 28, 2023                           s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge